[Civ. No. 1438.    Second Appellate District.—December 17, 1913.]

## DANIEL NEUHART, Respondent, v. GEORGE K. PORTER COMPANY (a Corporation), Appellant.

CORPORATION—AUTHORITY OF MANAGER—EMPLOYMENT OF BROKER.—A general manager of a corporation has express authority to do those things only which are ordinarily customary and usual in the transaction of its business. He may have also ostensible authority to do other things which the corporation by a course of conduct may hold him out as being possessed of; but that condition is not shown in this case where a broker, in his suit against a corporation for a commission alleged to have been earned in procuring a purchaser of its stock and bonds, contends that the manager employed him for that purpose.

ID.—BROKER—PROCUREMENT OF OFFER—ACCEPTANCE BY PRINCIPAL.—In this action by a broker against a corporation for a commission alleged to have been earned in procuring a purchaser for its stock and bonds, it is held that, conceding the manager of the corporation had authority to bind it in the matter of the sale of the stock and bonds, it did not, through such officer, accept the proposal made to it through the broker, the broker admitting that he was not employed to obtain a purchaser at a price fixed but at such a price as would be satisfactory to his employer, and it not appear-

ing that the broker ever obtained a binding contract from his proposed purchaser.

ID.—SALE OF BONDS—AFFIDAVIT AS SHOWING ACCEPTANCE.—A mere recital in an affidavit, filed by the president of a corporation in an action to enjoin the sale of the stock and bonds in question, that an offer of two hundred thousand dollars had been obtained for them which it was desirable to accept, does not bind the corporation as an acceptance of the offer of the broker's client.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Z. B. West, Judge presiding.

The facts are stated in the opinion of the court.

Louis P. Boardman, and Ward Chapman, for Appellant.

Carter, Kirby & Henderson, for Respondent.

JAMES, J.—Plaintiff alleged in his complaint that on or about the twenty-fifth day of November, 1909, he was employed by the defendant to obtain a purchaser for certain corporate bonds and stock and to negotiate a sale thereof subject to defendant's approval, for which it was agreed he was to receive a commission of one per cent on the amount of the sale. He alleged further that he did obtain a purchaser who was ready, able, and willing to pay the sum of two hundred thousand dollars for said stock and bonds and that the defendant agreed to accept the offer and to consummate the sale, but that it subsequently refused so to do, and sold the property to persons other than the proposed purchasers alleged to have been secured by plaintiff. Defendant admitted by its answer that one of its officers had agreed with the plaintiff that if a sale of the stock and bonds was made to a buyer found by plaintiff for a price satisfactory to defendant, a commission of one per cent would be paid, and admitted that the plaintiff had informed said officer that he had a purchaser who was able, ready, and willing to pay the sum of two hundred thousand dollars for the stock and bonds. It was denied that this offer was ever accepted, and it was denied that plaintiff did procure a proposed purchaser who was ready, able, and willing to pay the price mentioned. The

answer contained other matter of defense not necessary to be here stated. Upon trial being had, judgment was rendered in favor of plaintiff and a motion for a new trial was thereafter denied. Defendant has appealed from the judgment and from the order denying its motion for a new trial.

A determination of this appeal rests largely upon the solution of two questions, to wit: 1. Whether the general manager of defendant corporation had authority to bind the corporation in the matter of the sale of the stock and bonds in question; 2. Whether conceding that such authority existed, the corporation did through such officer accept the proposal made to it through plaintiff for the sale of the stock and bonds at the price of two hundred thousand dollars. It appears reasonably clear from all the evidence that the defendant was a corporation organized for the purpose of more conveniently handling the property of the George K. Porter estate, which consisted largely of agricultural lands. This corporation was organized by George K. Porter during his lifetime, and the capital stock of the same was apportioned in equal shares among his wife and two children. After his death his widow married Fred L. Boruff, who at the time of the transaction had with plaintiff was the secretary and general manager of the defendant corporation. The defendant, in addition to its direct ownership in lands, possessed one hundred and seventy-seven bonds of the San Fernando Mission Land Company and also one thousand shares of stock of the latter corporation. On the twenty-sixth day of August, 1909, at a meeting of the board of directors, a resolution was adopted which provided in part as follows: "Resolved, that Fred L. Boruff, the manager of the company, is hereby authorized and directed to put all the alleged properties of this company, with the exception of the home place, and improvements thereon, together with the orchards and premises surrounding the same, comprising about one hundred acres of land, upon the market for sale upon the most advantageous terms possible; and he is for that purpose authorized to employ agents to enter into negotiations with any prospective buyers and obtain such propositions as he can, both for the sale of said ranch property and also for the stock and bonds of the San Fernando Mission Land Company, and submit such offers or propositions to the board of directors; and if a satisfactory

proposition for the sale of any of said property is obtained, the president and secretary are authorized to consummate the same and to execute the papers necessary therefor." It was pursuant to this authority that Mr. Boruff, the general manager, negotiated with plaintiff for the purpose of selling the stock and bonds.

Plaintiff in his testimony stated that the price first set by Mr. Boruff was the sum of two hundred and fifty thousand dollars for the stock and bonds, and that upon he (plaintiff) remarking that he could not get that price, "Mr. Boruff thought he would take $230,000, and I told him that was impossible, that we could not get that price for the property. Then Mr. Boruff and I had several interviews, I can't just tell how many; . . . Finally Mr. Boruff spoke about he would take $215,000. . . . He said if I would sell them for $215,000 he would increase my commission. I told him no, that that was not the question that came in; the question was for him to put a price that I could deliver the bonds. He then finally spoke of $210,000. I then went back to Mr. Brand and told him that I had an offer, that I could deliver the goods for $210,000, and I believe he then made the offer of $200,000 for the property, both the stock and the bonds. Then I went to Mr. Boruff and told him, and finally Mr. Boruff agreed to take $205,000, and if I got that through he would still increase my commission; I told him no, the regular commission was one per cent. . . . I went to Mr. Brand again, and he refused to give them any more. . . . I then went down to Mr. Boruff. . . . We discussed it pro and con, and finally he says, 'come on, let us go down to the bank and see how much we owe on it'; down to the Security Savings Bank." The stock and bonds had previously, and during the lifetime of George K. Porter, been pledged as collateral security for a large loan with the bank named. The plaintiff testified that after he and Boruff reached the bank the interest due on the loan was calculated, and that Mr. Boruff asked the president of the bank to deliver the stock and bonds to a certain trust company and which the president refused to do until he had consulted his attorney, for the reason that he understood that there was an interest of a minor in the stock and bonds about which some question had been suggested. Plaintiff narrated how talk had followed between himself, Mr. Boruff's attorney, the .

attorney for the bank, and the attorney for the minor. The result was that in the course of two or three days an action was brought on behalf of the minor and the other child of George K. Porter, who was then of age, in which action an injunction was secured which restrained the corporation from making any sale of the stock and bonds. Within about thirty days the injunctional order was modified and a sale of the stock and bonds was made for a sum which netted the corporation two hundred thousand dollars, the purchasers not being the ones with whom plaintiff had had his negotiations. Plaintiff made no claim that Mr. Boruff had in words agreed to accept less than two hundred and five thousand dollars for the stock and bonds, and he also admitted that he had refused to inform Boruff as to who his prospective purchaser was. His counsel argue that the action of Boruff when the offer of two hundred thousand dollars was communicated to him by plaintiff amounted to an acceptance of the offer.

First taking up the question of the authority of the general manager to bind the corporation: Plaintiff made no statement in his testimony that any representations were made by Boruff as to the powers which he possessed respecting the business of the corporation; he did not even state that he knew that Boruff was the general manager of the defendant company. Throughout his testimony he referred to him simply as "Mr. Boruff." He made no claim of knowledge of any transactions had prior to that time wherein similar negotiations had been consummated by the general manager without protest from the corporation, and he made no showing that the general business of the corporation comprehended the sale or transfer of stock and bonds possessed by it. In fact, it may be said, judging by the contents of the affidavit filed by the president of the corporation in the injunction suit matter, that the chief and ordinary business of the corporation was to control, manage, and operate its agricultural lands. It seems that the debtors of the corporation to whom large sums were owing had pressed for payment, and the corporation had found it necessary to dispose of its principal properties in order to satisfy these creditors. There was owing to the bank which held the stock and bonds as collateral security a sum of money in excess of one hundred thousand dollars. In the resolution from which quotation has been made, and in the

preliminary portion thereof there was set forth the reasons why a sale of the property was desired to be made. A general manager of a corporation has express authority to do those things only which are ordinarily customary and usual in the transaction of its business. He may have also ostensible authority to do other things which the corporation by a course of conduct may hold him out as being possessed of, but that condition is not shown in this case, as has been before noted. (Civ. Code, secs. 2317, 2319; Thompson on Corporations, 2d ed., vol. 2, sec. 1690, et seq.) It has been held in this state that the president of a corporation has no power merely by virtue of his office to buy and sell the property of the corporation. (*Black* v. *Harrison Home Co.,* 155 Cal. 121, [99 Pac. 494] ; *Alta Silver Min. Co.* v. *Alta Placer Min. Co.,* 78 Cal. 629, [21 Pac. 373] ; *Northwestern Packing Co.* v. *Whitney,* 5 Cal. App. 105, [89 Pac. 981].)

In considering whether there had been an acceptance by Boruff of the offer made by plaintiff, there is another fact which is entitled to emphasis, and that is, that the plaintiff at no time procured an offer of the price which Boruff stated to him he desired should be secured for the stock and bonds. In the complaint of plaintiff it was admitted that he was not employed to obtain a purchaser at a price fixed, but such a price as would be satisfactory to his employer. In his testimony he admitted that he never did obtain an offer for a price of any amount such as was named by Boruff, as the least price named by the latter was the sum of two hundred and five thousand dollars. Boruff's response to the offer of two hundred thousand dollars was: "Let us go to the bank and see how much we owe." Plaintiff never did produce his purchaser before Boruff, nor did he procure any deposit of money on account of the purchase price, and he refused to tell his employer who the proposed purchaser was. He never obtained a binding contract from his proposed purchaser, and therefore could not present to his employer an offer of contract which upon acceptance would have been binding upon the vendee. Under these circumstances the evidence did not justify the trial judge in determining that there had been an acceptance, even by Boruff of the offer alleged to have been procured by the plaintiff. The claim is made that, because in the affidavit of Kate C. Boruff, the president of the corporation,

which affidavit was filed in the injunction suit, the affiant set out that an offer for the stock and bonds of two hundred thousand dollars had been obtained which it was desirable to accept, such admission showed an acceptance by the corporation of the offer of plaintiff's client, and amounted to a waiver of any duty resting upon plaintiff to produce a binding offer from his proposed purchaser, or to produce him before the other contracting parties. The statements made by Kate C. Boruff in her affidavit, if they could be given the effect which respondent claims for them, could not be binding upon the corporation. She did not set out in her affidavit that the directors had accepted the offer, or that they had moved in that direction and would have consummated such act, except for the interference made by the injunctional order. On all of these points it seems that the plaintiff failed to sustain his burden by the proof offered, and that the findings of the trial judge in his favor are without sufficient support in the evidence.

For the reasons given, the judgment and order are reversed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1914.