118 P.2d 1113

SAVAGE v. HOWELL et al.

No. 4554.

Supreme Court of New Mexico.

Nov. 22, 1940.

Rehearing Denied Nov. 7, 1941.

Marron & Wood and Lillian C. Scott, all of Albuquerque, for appellant.

Reed Holloman, of Santa Fe, for appellee S. J. Howell.

Kiker & Sanchez, of Santa Fe, for appellees Dade Bigbee, J. Frank Bigbee, and E. W. Alston.

MABRY, Justice.

This suit is upon a supersedeas bond. The bond was given on appeal to this court upon a declaratory judgment entered against one S. J. Howell and in favor of Bond & Brother Mercantile Company, which case was heretofore appealed to this court and affirmed. Howell v. G. W. Bond & Bros. Mercantile Co., 43 N.M. 97, 85 P.2d 749. The questions here presented are whether the judgment referred to and so appealed from and affirmed is a money judgment, and whether, under the pleadings and the bond sued upon, any damages are shown.

On February 14, 1938, a judgment was entered in a cause theretofore instituted in the District Court of Torrance County, wherein one S. J. Howell was plaintiff and the aforesaid G. W. Bond & Brother Mercantile Company was defendant, wherein plaintiff sought a declaratory judgment, declaring and fixing the rights then existing between the plaintiff and defendant covering various transactions extending over a period of years; a judgment was entered declaring that, because of said transactions and dealings between the parties, there was due from plaintiff Howell to the defendant company, as of the date of the trial, October 31, 1937, the total sum of $23,137.78. The judgment likewise declared and decreed that defendant company had a first and prior lien by virtue of conveyances theretofore made by plaintiff, upon considerable real property of the plaintiff.

Appellant urges that the judgment obtained, though substantially in the language of a conventional declaratory judgment, partakes nevertheless of the qualities of an ordinary, or coercive judgment and, therefore, was in part at least if not entirely, a money judgment upon which execution could have issued without further formality. Appellees challenge this appraisal of the judgment. It seems quite clear that plaintiff in that action was not seeking an executory (coercive) judgment, but was seeking merely a declaration of liability and rights as between the parties.

All parties and the court understood that the security given by Howell to the company had been assigned and pledged to the R.A.C.C., a governmental agency, to secure a debt owing by the company which had not been paid. Obviously such assignee or pledgee of the security must be a party to the suit in foreclosure of the lien upon the land in order to there effect a clear foreclosure of its rights. This situation might have influenced plaintiff Howell in seeking a declaratory, as distinguished from a coercive, judgment. In any event, we find the following language near the close of plaintiff's complaint: "That although the whole of said amount is due and unpaid, it is not personally the desire of the defendant to enforce the payment thereof by foreclosure proceedings in this cause, but merely to declare the rights and obligations of the parties; without prejudices to the rights of this defendant to enforce the

same by such subsequent action or proceeding, as he shall hereafter be advised."

Taking this language, in the light of the apparent knowledge of the parties, that the interest of the assignee in the land in question could not be influenced by the suit to which such assignee was not a party, and considered in connection with other language employed in the complaint and in the declaratory judgment, it is obvious that plaintiff was not seeking a judgment upon which he could realize an immediate execution. He was attempting, rather, to have an adjudication of the debts and liabilities due and owing as between the parties, looking to further actions or moves on the part of either party before satisfaction could be realized and payment recovered.

In Par. 10, near the end of the judgment, we find this language:

"That the indebtedness and obligations of the plaintiff to the defendant as declared herein are and constitute a first, prior and superior lien upon the real property of the plaintiff deeded to the defendant as declared herein, until the same shall be fully paid with interest and costs, and the defendant may apply at the foot of this judgment by petition or such other appropriate method as it shall elect to enforce and carry out its remedies against the plaintiff for the rights as herein declared.

"The defendant in such subsequent proceedings as it may elect may also ascertain and collect any damages that may result from non-performance by the plaintiff of any existing partido contract."

The indebtedness found and declared to exist arose largely out of dealings between the parties upon partido contracts covering extensive sheep operations, and extending over several years. Although the trial in the original cause ended on October 31, 1937, the judgment of the court was not given and entered until the 14th day of February, 1938. In the interim, and between the close of the trial and the formal entry of the declaratory judgment as aforesaid, the parties in said suit made and entered into an agreement compromising and settling all differences arising under the partido contracts litigated in this suit. This, appellees contend, took out from the operation of the judgment and the supersedeas bond given by Howell and his sureties upon appeal therefrom, all matters relating to the partido contract theretofore litigated and upon which the judgment was based.

The contract and compromise settlement was made on the 13th day of November, 1937, and was evidenced by a letter addressed to Howell and with a notation of acceptance upon the communication. The written communication reads:

"We agree to compromise and settle our differences arising under our partido contracts with S. J. Howell dated November 6th 1936 as follows:

"In addition to the sheep now separated and turned over to us by the sheriff, Howell will deliver to us all his ewe lambs at

least 1080 in number, 209 six year old ewes 10 old ewes and 60 bucks. All the remaining ewes to be turned over to Howell released from all claims under the partido contracts. We will pay the taxes on the sheep unpaid for 1935-1936 and 1937 and pay Howell $610.00 in cash. Any cash credit in our hands due Howell for this years business after deducting the $610.00 and the taxes will be held by us to await the determination of Howell's pending suit against us. The replevin suit will be dismissed and our bond given release. The old sheep turned over to Howell under this agreement will be also held by Howell subject to the payment of such sums, if any, as the court may find Howell owes us in pending suit. If Howell approves he should write word Approved at the bottom of this telegram and sign it. The six hundred ten dollars to be used by Howell to pay herders and other expenses of running sheep.

"G. W. Bond & Bro. Merc. Co.
"Accepted
"S. J. Howell
"Accepted
"G. W. Bond & Bro. Merc. Co.
"By N. Kranawitter."

It appears that after the suit for a declaratory judgment had been heard, and prior to the giving and entry of the judgment as aforesaid, the defendant company filed an independent suit in replevin to recover possession of all sheep held by Howell and allegedly covered by said partido contracts. The agreement above referred to was intended to effect a settlement of all differences between the parties under the partido contracts, upon which the indebtedness theretofore found by the court in the declaratory judgment suit was based. We hold that the agreement did in fact have such effect, and that, when the court came to give and enter the judgment, of February 14, 1938, although probably not advised of the settlement, any matters and things embraced in any such then liquidated contracts were not covered thereby. The declaratory judgment did not undertake to recite that any partido contract existed between the parties on the date thereof, but merely declared a right, in any appropriate proceedings, to collect damages for non-performance of any possible partido contracts—a right which the company possessed without such declaration.

It further appears that after the declaratory judgment had been affirmed by this court, as aforesaid, application was made to the trial court to have the real estate described in the declaratory judgment of February 14th sold to satisfy the indebtedness declared to have existed as of October 31, 1937, the date of the trial. Such real estate was sold, the sum of $11,964.42 was recovered upon such sale and applied to the indebtedness found to be owing, viz., the sum of $23,137.78, plus cost and interest. This left a deficiency for which the court thereafter gave judgment in the sum of $14,729.52.

Several months thereafter the suit out of which this appeal grew was brought

upon a supersedeas bond in the sum of $2,500 against the said Howell and his two sureties, defendants and appellees herein. This bond was fixed by the court without objection at the time of the appeal. Appellant contends that the bond superseded a money judgment, and that the principal and sureties thereon are liable to respond to the full amount thereof in view of the deficiency existing after the lien impressed property had been sold. Defendants and appellees contend that the declaratory judgment was not a money judgment as to any part thereof, and that no money judgment was in fact superseded, that nothing complained of in the suit upon said bond may be classified as coming within any of the terms thereof, and that therefore no liability is established. The trial court agreed with this view, and denied plaintiff relief. It will be observed that the suit upon the bond is brought in the name of the receiver of appellant corporation. The corporation, after the entry of declaratory judgment was made, became insolvent, and Savage was appointed receiver.

The bond was in the usual form, and, in part, provided: "Now if this appellant shall prosecute this appeal with diligence and if the decision of the lower court be affirmed, or the appeal dismissed, and this appellant shall comply with said judgment and pay all costs and damages finally adjudged against him, including legal damages, if any, caused by the taking of this appeal, whether said damages be assessed on motions made in the cause or in a civil action on this bond, then this bond shall

be null and void; otherwise in full force and effect."

Defendants and appellees challenge the sufficiency of the bond as a supersedeas upon which recovery here sought could be had, upon two grounds, viz., (a) that the amount of the bond was not in double the amount of the judgment and therefore did not comply with the statutory requirement for supersedeas bonds, par. 105-2513, N.M.Comp.Laws 1929, and (b) that there was given no money judgment, or other judgment upon which liability could here attach.

It will be necessary to hereafter discuss further and briefly the pleadings and the judgment in the declaratory judgment suit, as to some language found therein, in determining whether the appeal here under consideration was in fact from a money judgment.

Appellees challenge the bond as being sufficient in any event, and even though it could be said the appeal was from a money judgment, since it is not in an amount double the sum of the judgment, as required by Sec. 105-2513 of N.M.Comp. Laws of 1929. We pass the question of whether appellees, the makers of the bond, could, under the circumstances, complain of its inadequacy as to amount, and look to the question of what in fact does the bond supersede, if it is not a money judgment we are considering.

Appellant contends that the interest on the amount found due in the declaratory judgment is one element of damage which

the bond obligates appellees to pay; and, that another item for which it must respond, is the loss of the sheep turned back to, and which were to be held by, Howell pending the outcome of the suit.

We examine first the item of interest. The complaint does not allege any amount of interest to have been lost by virtue of the appeal. It appears upon the face of the complaint that, after the superseded judgment was affirmed, foreclosure of the lien was had and more than $11,000 was recovered and applied upon the total amount owing from Howell to the plaintiff. This total amount, of course, included principal, interest to the date of the ascertainment of the deficiency, and costs. In the absence of other directions or agreement between the parties, it cannot be said that the application of the $11,000 payment was not made, first, to costs incurred; second, to interest due up to the time of ascertainment of the amount of the deficiency; and, third, the balance to the principal indebtedness.

In 15 R.C.L., Interest, Sec. 28, page 31, it is said: "Computation of interest on Partial Payments.—As to the computation of interest where partial payments have been made upon a debt bearing interest the rule sanctioned by the decisions or statutes of most of the states, and commonly known as the United States rule, is to apply the payment, in the first place, to the discharge of the interest then due. * * *"

This rule was adopted in New Mexico in the case of Jones-Downes Company v. Chandler, 13 N.M. 501, 85 P. 392, 13 Ann. Cas. 710. At page 505 of the N.M. report, at page 393 of 85 P. Mr. Chief Justice Mills said: "An examination of the record discloses that on April 26, 1902, which was after the note became payable, $2,500, was paid, and the payment was indorsed upon the $5,000 note (neither the principal nor any interest then being due on the note for $6,000) in the following words: 'Paid upon within, April 26, 1902, $2,500.' This indorsement does not disclose that an application of the payment was made by either the maker or the holder of the note, consequently, it became the duty of the court to direct its application. 18 Am. & Eng. Encycl. of Law (1st Ed.) p. 245, note 1. This the court did by following the Massachusetts, and not the Connecticut rule; that is, the partial payment, instead of being applied directly to the discharge of the principal, was first applied to the payment of the interest then due on the note, and there being more than enough to pay the interest, the remainder was applied, as far as it would go, to the payment of the principal of the note. The Massachusetts rule for computing interest, when partial payments are made, is the one used by most of the courts of this country, including the Supreme Court of the United States, and is, we think, the proper one."

When the payment of the $11,000 was made, therefore, all interest which had accrued to that date on the total upon which (after application of the payment) the deficiency was adjudged, was paid; and the only interest which could possibly be owing

from defendant Howell to the plaintiff in this case is interest accrued upon the deficiency judgment; and, there could be no justifiable complaint against defendants on account of a default in payment of this, a subsequent judgment.

Was the loss of the sheep to be held by Howell an element of such damage? Appellant points out that it was found and held in the declaratory judgment that Howell, at the time of the trial, had in his possession under a partido contract 4,789 sheep belonging to defendant corporation. The date of the trial was October 31, 1937, but the judgment was not made and entered until February, 1938, as we have said. In the meantime, as is hereinbefore shown, and after the company had brought an independent suit in replevin to recover all of such sheep, the parties Howell and appellant company (the company being plaintiff in the replevin suit) entered into a contract "compromising and settling" all differences "arising under our partido contracts" the company taking possession of all but some 500 head of sheep. The agreement was that such remaining sheep so retained by Howell were "released from all claims under the partido contracts." Obviously such sheep as were retained by Howell, though he bound himself to hold them subject to the payment of any amount which the court might find owing to the mercantile company, uninvolved by the partido contracts, were nevertheless his property. Moreover the declaratory judgment "declared" or "found" that there was a lien upon the lands described to secure performance under any partido contract in existence on October 31, 1937; and, as held by the trial court in this suit upon the bond, by foreclosure of the lien and the sale of the real property, satisfaction was thus had as to all rights actually secured by such judgment.

The declaratory judgment appealed from ordered the payment of nothing. It established no liens on account of any sheep except those held under partido as of October 31, 1937. It does not appear by the pleadings, or otherwise, that the court, at the time of making and entering of the judgment, had any knowledge of the transaction by which the partido contracts were ended and the new contingent obligation on account of the remaining sheep then personally owned by Howell, arose. But this would not affect the result.

It is clear, therefore, that the supersedeas bond was never in effect as to any partido contract, since at the time of the entry of the judgment, the taking of the appeal and giving of the bond, there were in existence no such contracts. The lien found by the court as existing, was in no way interfered with. The property was in fact sold by order of the court upon formal proceedings thereafter taken in the suit, and the money realized therefrom applied as aforesaid.

We advert now to a brief discussion of the nature of the judgment obtained, to support our holding that it was purely a declaratory, and not a coercive, judgment.

Our declaratory judgment statute, Chap. 143, Laws 1935, provides:

"Section 1. In cases of actual controversy, the courts of record of the State of New Mexico shall have power, upon petition, declaration, complaint, or other appropriate pleadings, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of the final judgment or decree and be reviewable as such.

"Section 2. Further relief, based on declaratory judgment or decree, may be granted whenever necessary or proper. The application shall be by petition to the court having jurisdiction to grant relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith.

"Section 3. For the purpose of this act, the State of New Mexico, or any official thereof, may be sued and declaratory judgment entered when the rights, status or other legal relations of the parties call for a construction of the constitution of the State of New Mexico, or any statute thereof."

It is difficult to see how appellant could have had execution on the judgment until further proceedings were had. The complaint stated that any relief upon the declaration of rights would await further moves on his part. The judgment itself provided for application by appellant "at the foot of this judgment", by petition or other appropriate method "to enforce and carry out its remedies against the plaintiff for the rights as herein declared". Obviously, appellant never sought a judgment upon which execution, as a matter of course and without other proceedings, could issue.

■ The main characteristic of the declaratory judgment which distinguishes it from other judgments, is the fact that it conclusively declares the preexisting rights of the litigants without "the appendage of any coercive decree". Village of Bay v. Gelvick, 58 Ohio App. 51, 15 N.E.2d 786, 791.

"Declaratory judgment action" is distinguished from other actions in that it does not seek "execution or performance" from the defendant or opposing party. Brindley v. Meara, 209 Ind. 144, 198 N.E. 301, 101 A.L.R. 682.

A declaratory judgment is distinguished in that "no executory process follows as of course. * * *" Petition of Kariher, 284 Pa. 455, 131 A. 265, 268.

■ It is not necessary to a decision in this case and we do not say whether or not, under our statute, a declaratory judgment cannot under proper circumstances, and without further proceedings have the coercive effect of an ordinary judgment. We say simply that under the pleadings, facts and judgment, this is not a money judgment.

Nor need we speculate as to the intention of the trial court when it fixed the supersedeas in the arbitrary sum of $2,500. It is enough to point out that under our statute, Sec. 105-2513, N.M.Comp.Laws 1929, where the judgment appealed from is for a recovery other than a fixed amount of money, the court, in its discretion, fixes the amount of the bond.

Finding no error, the judgment will be affirmed, and, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.

On Motion for Rehearing.

MABRY, Justice.

The plaintiff-appellant, moving for rehearing, sets forth two grounds therefor. In addition, he calls to our attention a claimed erroneous statement in our recital of the facts. The statement that "the complaint does not allege any amount of interest to have been lost by virtue of the appeal" was inadvertently made. The complaint does allege a loss of interest on the judgment because of the stay and delay occasioned by the appeal and supersedeas. This inaccuracy of statement, however, in no way affects the result reached.

Only one of the two grounds for rehearing need be considered. As to the other, we are satisfied with the treatment accorded the subject in our former opinion.

It is strongly insisted that we erred in our treatment of the item of interest claimed as damages under the supersedeas bond. Assuming, as plaintiff contends and correctly we think, that he was stayed in the foreclosure of his corporation's mortgage for the period of supersedeas, this alone does not entitle him to judgment against the sureties. There must have been a loss of such interest to plaintiff. The foreclosure proceeding was to satisfy an amount adjudged due in excess of $23,000, consisting of both principal and interest. The order of sale directed an application of the proceeds of sale to the total indebtedness without specifying any application as between principal and interest. If the rule governing the application of voluntary partial payments be deemed to have been properly followed under the order of sale, then all the interest for loss of which claim is made under the bond was satisfied and the claim fails. On the other hand, if, as plaintiff argues, the special master shall be deemed properly to have applied the proceeds on equitable principles, the rule governing where the proceedings are in invitum (46 C.J. 462, § 86 under topic "Payment"), and to have appropriated the entire proceeds to principal, then interest for the period of supersedeas is recoverable from the sureties on the supersedeas bond. We thus were called upon to interpret the order of sale in this behalf. We did so in this language, from which position we now are asked to recede, to-wit: "In the absence of other directions or agreement between the parties, it cannot be said

that the application of the $11,000.00 payment was not made, first, to costs incurred; second, to interest due up to the time of ascertainment of the amount of the deficiency; and, third, the balance to the principal indebtedness."

We are not persuaded that the effect given the order of sale in the language just quoted misinterprets its true intent. If it were the case of applying the proceeds of a voluntary partial payment, obviously no other application than that deduced from the order in our former opinion would have been thought of. Although the payment here involved was compulsory in form, i. e. through a judicial foreclosure, yet in substance and practical effect it is so nearly voluntary in character as reflected by circumstances to be mentioned, that we think we' should violate the true intent of the order to treat it as made in the light of any other understanding of it. In the first place, it was a default foreclosure, having the semblance but lacking the reality of a contest. Furthermore, the plaintiff, through his own or his corporation's attorney, was in complete charge of the proceedings.

One of two inferences seems inescapable. The plaintiff, in charge of the default foreclosure proceedings, either made no request for inclusion in the order of sale of a specific direction that the proceeds be applied first to the principal indebtedness and the remainder to interest; or, having made such request, the same was denied by the trial judge in the form of order actually entered.

The plaintiff's position is but little aided in assuming either alternative as the true one. If the specific direction we are now asked to supply by construction were asked and refused, obviously we should lack grounds for reading it into the order actually made. On the other hand, if the trial judge were not reminded of the pertinency of a different rule by a request for specific direction governing application, then because of the considerations mentioned, it would appear the more likely and natural thing for him to have intended the application appropriate to the seemingly voluntary character of the payment involved. While, of course, we impute knowledge of both rules to the trial judge, he naturally was more familiar with the United States rule governing application of partial payments voluntarily made. It theretofore had been approved and applied in this jurisdiction in Jones-Downes Company v. Chandler, 13 N.M. 501, 85 P. 392, 13 Ann.Cas. 710, and Armijo v. Henry, 14 N.M. 181, 89 P. 305, 25 L.R.A.,N.S., 275, whereas we never before had had occasion to notice or consider the rule governing application of involuntary payments.

Even under the rule generally followed in making application of involuntary payments, i. e., upon equitable principles (46 C.J. 462), there is no fixed standard of application. Some three or four different methods are employed to accomplish equity, as suggested by the text cited. The

discretion of the trial judge controls and within that discretion, even in proceedings in invitum, he is privileged to adopt the rule followed in applying partial payments voluntarily made, if it seems the more equitable.

All parties agree that we may not in this proceeding apply the payment arising from the foreclosure proceedings. Unquestionably, some application of the payment, as between principal and interest, was made by the special master prior to or coincidentally with the approval of his report of sale. We simply are compelled to determine from the order what application the master properly may have made and then assume that such application was made. Thus seeking to determine the true intent of the order, the plaintiff asks us to assume application under it conformably to what *now* may appeal to us as equitable. But the record fails to show that these considerations were urged upon the trial court when it incorporated in the order of sale only a general direction for application of the proceeds thereof. Indeed, the implications are strongly to the contrary. We adhere to our former holding that the application was first to costs; second to interest; and third to principal.

This conclusion, although unsatisfactory, is less so than that proposed by the plaintiff. And, yet, a simple request for specific direction as to application of the payment, seasonably made by the party now asking us to interpret the obscure passages of the order, or by his predecessor in interest, would have removed all doubt on the subject.

The motion for rehearing will be denied, and it is so ordered.

BRICE, C. J., and ZINN, SADLER, and BICKLEY, JJ., concur.