SALT LAKE VALLEY LOAN & TRUST CO.
v. ST. JOSEPH LAND CO.
SAME v. ST JOSEPH WATER & IRRIGATION CO.

Nos. 4545, 4546.   Decided December 5, 1928.   (273 P. 507.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*Morris & Callister,* of Salt Lake City, for respondents.

HANSEN, J.

These two causes were argued and submitted together. In each proceeding the plaintiff seeks to foreclose a mortgage. In the main, the law questions are the same in both suits. There is no substantial conflict in the evidence as to the facts.

In the suit of the plaintiff against the defendant, St. Joseph Land Company, the facts are these:

On March 24, 1910, Harold C. Krouskoff made, executed, and delivered to one William T. Cooper a promissory note and a real estate mortgage to secure the payment of such note. The note was for the principal sum of $4,500, payable $1,000 on or before July 15, 1910, $1,000 on or before October 15, 1910, and $2,500 on or before January 15, 1911. The note bore interest at the rate of 6 per cent per annum. William T. Cooper assigned and transferred the note and mortgage to the plaintiff. The defendant purchased the mortgaged premises subject to the mortgage. On April 15, 1912, the sum of $2,500 was paid on the note and mortgage. No payment of either principal or interest was made after that date. Suit was commenced by plaintiff against the defendant, St. Joseph Land Company, on November 24, 1924.

The suit of plaintiff against St. Joseph Water & Irrigation Company is based upon the following facts:

On October 18, 1910, the defendant, St. Joseph Water & Irrigation Company, made executed, and delivered to one Charles E. Pace four promissory notes, one for $500 payable on or before November 1, 1912, one for $500 payable on or before November 1, 1913, one for $500 payable on or before November 1, 1914, and one for $1,000 payable on or before November 1, 1915. The notes all bore interest at the rate of 6 per cent per annum. To secure the payment of the five notes defendant, St. Joseph Water & Irrigation Company, executed and delivered to Pace a real estate mortgage. The mortgage was executed on the same date as the notes. The notes and mortgage were transferred by Pace to the plaintiff herein. No payment whatsoever of either principal or interest has been made upon the notes, or any of them. Suit was brought to foreclose the mortgage securing the notes on November 24, 1924.

The plaintiff alleges in its complaint against the St. Joseph Land Company and also in its complaint against the St. Joseph Water & Irrigation Company "that within six years prior to the institution of this action the defendant

acknowledged in writing the said obligation and agreed to pay the same. Each of the defendants denied that it had acknowledged or agreed to pay the obligations sued upon within six years prior to the bringing of said action. Each of the defendants also alleged in their answers that the alleged causes of action brought against each was barred by the provisions of Comp. Laws Utah 1917, §§ 6466 and 6474.

The trial court found that neither defendant had acknowledged or promised to pay the obligations sued upon by the plaintiff within 6 years immediately preceding the commencement of plaintiff's suits. Judgments were rendered and entered accordingly dismissing plaintiff's suits against each defendant. The plaintiff prosecutes these appeals from the judgments so rendered.

Under the provisions of Comp. Laws Utah 1917, § 6466, it is provided that an action founded upon a written contract must be commenced within 6 years. It is clear that neither of the suits involved in these proceedings was commenced within the 6-year period provided by statute.

The plaintiff relies upon the provisions of Comp. Laws Utah 1917, § 6489, to avoid the defendants' pleas that plaintiff's claims are barred by the statute of limitations. The law so relied upon by the plaintiff reads thus:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby. When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

The plaintiff contends that the defendants in each of the suits now under review acknowledged and promised to pay the obligations sued upon. Each of the defendants contends to the contrary. The sole question to be determined upon

these appeals is whether or not the trial court erred in its finding that each of the suits was barred by the statute of limitations.

The evidence in both cases is substantially the same and is as follows: Both of the defendant corporations were organized in July, 1910. The articles of incorporation of each defendant company provides that Harry S. Joseph shall be president, a director, and general manager. Julian M. Bamberger was made vice president and a director of each of the defendant corporations. Joseph and Bamberger qualified by taking oaths as officers of each of the defendant corporations. They both continued to act as such officers until these suits were begun. Julian M. Bamberger was also secretary of the defendant corporations during a part of the time between the organization of the defendant companies and the bringing of these suits. Julian M. Bamberger was a stockholder and for a few months prior to the time these suits were commenced was also an officer of the plaintiff corporation. The articles of each of the defendant corporations contain the following provision:

"The general manager shall be elected by the board of directors. * * * The general manager shall have power to direct, manage and carry on the business of the corporation subject to the control of the board of directors and to make and execute all contracts pertaining to the ordinary business of the corporation."

Harry S. Joseph, as general manager, directed the farming operations of the defendant companies. He also rented the water rights belonging to the companies and collected rentals. Joseph purchased some farming machinery for one of the defendant companies. There is no evidence of any other acts which Joseph did as general manager of the defendant companies unless it be the writing of the letters hereinafter set out. Joseph wrote and mailed to the addresses indicated letters in words and figures as follows:

"Salt Lake City, Utah, Dec. 20, 1916.
"Mr. W. E. Jones, Secretary Salt Lake Valley Loan & Trust Company, City. Dear Sir:. I am today in receipt of your letter of De-

cember 20th relating to mortgage of the St. Joseph Water & Irrigation Company for $2,500.00 which you acquired Oct. 18, 1910.

"I desire to state that, under the terms of the contract between the St. Joseph Water & Irrigation Company and the Salt Lake and Ogden Railroad Company, the latter company was to pay one-half of this amount, which represents part of the purchase price of the land. The other half is to be borne equally by Mamie Joseph and Julian M. Bamberger, who are equally interested in the St. Joseph Water & Irrigation Company.

"I desire to state that Mamie Joseph is prepared to pay her proportion of the same, amounting to $625.00 and interest.

"Very truly yours,
"H. S. Joseph, Manager.

"P. S. Would you please have copy of mortgages stricken off and mailed to me immediately."

"Salt Lake City, Utah, Dec. 20 1916.

"Mr. W. E. Jones, Auditor Salt Lake & Ogden R. R., City. Dear Sir: I call your attention to the fact that the Salt Lake Valley Loan & Trust Company has asked a payment on the mortgage it holds on the land in Section 13, tp. 1 North, Range 1 West, upon which is situated the springs supplying your company with water. While your company has no interest in the land, you will note by the enclosed (copy) resolution of the St. Joseph Water & Irrigation Company that in 1910 an agreement was made between the Railroad Company and the St. Joseph Water & Irrigation Company which provides, amongst other things, that the Salt Lake & Ogden R. R. Company shall pay one-half the cost of the land upon which said springs are situated. We therefore ask you to contribute half of the amount of said mortgage, namely, $2,500.00, with interest, so that the St. Joseph Water & Irrigation Company may be in a position to immediately comply with the request of the Salt Lake Valley Loan & Trust Company to take up the mortgage.

"Very truly yours,
"H. S. Joseph, Manager.

"[Enclosure.]

"This one of the considerations for providing your company with water free of charge."

"Salt Lake City, Utah, Nov. 26, 1918.

"Mr. W. E. Jones, Secretary, Care Bamberger Electric Ry. Co., Salt Lake City, Utah. Dear Sir: I am in receipt of your two letters of November 25th relating to the two mortgages which you hold,

one against the St. Joseph Land Company and the other against the St. Joseph Water & Irrigation Company. You will recall that last year some time I endeavored to acquire said mortgages from you and offered you the money for the same but you refused. However, you will understand that the Bamberger Electric Railway Company are obligated to pay one-half of the mortgage against the St. Joseph Water & Irrigation Company and also for its proportion of the mortgage against the St. Joseph Land Company for its proportion of the land deeded by the St. Joseph Land Company to the Salt Lake & Ogden Railway Company. Mr. Julian Bamberger also owns one-half of each of these two associations with Mamie Joseph who owns the other half and as soon as these parties in interest, namely the Bamberger Electric Railway Company, the successor in interest to the Salt Lake & Ogden Railway Co., Julian Bamberger and Mamie Joseph contribute their proportion due on these mortgages, they will be paid.

"As soon as I have time, I shall come to see you and try to make such adjustments as will be mutually satisfactory. Very truly yours, St. Joseph Land Company, by H. S. Joseph, Manager. St. Joseph Water & Irr. Co. by H. S. Joseph, Manager."

"Salt Lake City, Utah, March 29, 1919.

"Mr. W. E. Jones, Secretary Salt Lake & Ogden Railway Co., Salt Lake City, Utah. Dear Sir: Pursuant to my conversation with you relative to the mortgages held by the Salt Lake Valley Loan & Trust Company will state that there are several matters that should be adjusted between the Salt Lake & Ogden Railway Company and our companies in relation to the payment of these mortgages.

"You will recall that in the latter part of 1917 I offered to purchase or to pay for these mortgages from the Salt Lake Valley Loan and Trust Company, which offer was not accepted at the time. In November of last year I wrote you as per copy of enclosed letter and no reply was received thereto. You understand that there is a sort of community interest between the officers of the Salt Lake Valley Loan & Trust Company, the Salt Lake & Ogden Railway Co., the St. Joseph Land Co. and the St. Joseph Water & Irrigation Co. and I would suggest that a conference be held between the representatives of these companies looking to an adjustment of this community interest. As you are undoubtedly aware, the St. Joseph Water & Irrigation Co. owns the water on one of the Lands in question together with the land, but the Salt Lake & Ogden Railway have the use of what water is necessary for its purpose at St. Joseph in consideration of its fulfilling certain agreements. The St. Joseph

Water & Irrigation Co. owns its own pipe lines and in which the Salt Lake & Ogden Railway Co. have no interest. It was agreed between the Salt Lake & Ogden Railway Company and the St. Joseph Water & Irrigation Co. that the Salt Lake & Ogden Railway Co. should pay one-half of the cost of the land upon which the water belonging to the St. Joseph Water & Irrigation Co. is situated. Besides, the Salt Lake & Ogden Railway Co. still is indebted to the St. Joseph Water & Irrigation Co. for its half of the maintenance of the said lines and pipe owned by the St. Joseph Water & Irrigation Co. for the past eight years. Besides, the Salt Lake & Ogden Railway Co. received a deed from the St. Joseph Land Co. for certain rights of way and shop site on the land belonging to the St. Joseph Land Co. in consideration of certain things being done by the Salt Lake & Ogden Railway Co. Inasmuch as Mr. Julian Bamberger of the Salt Lake & Ogden Railway Co. is not present in the city I have been unable to confer with him looking to an adjustment of these matters and I ask you to have the matter deferred until he returns. Between him and myself I am satisfied the entire matter can be adjusted to your satisfaction.

"Yours truly,             H. S. Joseph."

Joseph testified that he had never been authorized by resolution or otherwise by the board of directors of either of the defendant coroprations to write any of the letters above set out; that the letters were written by him in his individual capacity and not as general manager of either of the defendant corporations. There is no evidence that the board of directors of either of the defendant corporations directed or authorized the writing of the letters so written by Joseph.

Julian M. Bamberger, while secretary of the defendant coroprations, wrote a letter in words and figures as follows:

"May 20, 1919.

"Salt Lake Valley Loan & Trust Co. Salt Lake City, Utah. Gentlemen: In reference to the notes and mortgages held by the Salt Lake Valley Loan & Trust Company—one against the St. Joseph Water & Irrigation Company for $2,500.00 and one against the St. Joseph Land Company for $4.500.00—and the fact that as stated by you the mortgages are long past due, I wish to advise you that the Bamberger Railroad is trying to work out an understanding with

respect to this property covered by the mortgages by which payments for water will be made by the Railroad Company. These mortgages are, of course, valid obligations, which must be paid and both of the companies recognize this, and as secretary of both companies and heavily interested in them, I want to assure you that the companies have no intention of repudiating these obligations, and whether or not a satisfactory arrangement is worked out with the railroad company these notes will be paid within a short time. Yours very truly, St. Joseph Land Co., St. Joseph Water & Irr. Co., by Julian M. Bamberger, Secretary."

The record is not clear as to whom, if any one, this letter was mailed or delivered. No claim is made that Bambereger was authorized by the board of directors of either of the defendant companies to write the foregoing letter. Bamberger did testify that he talked with Harry S. Joseph, about writing, or about having written the letter. Joseph denied having had any conversation with Bamberger relative to the letter.

Upon substantially the foregoing evidence the plaintiff contends that Harry S. Joseph had authority to and did avoid the defense of the statute of limitations on behalf of each of the defendant corporations. It is urged on behalf of the defendants that the evidence does not show such authority on the part of Joseph, and that in any event the letters written by Joseph are not such an acknowledgment or promise as avoided the defense of the statute of limitations.

It is clear that the evidence in these cases does not justify a finding that the letter written by Julian M. Bamberger is binding upon the defendant corporations. There is no evidence showing or tending to show that Bamberger ever represented the defendant corporations or either of them in any business transaction whatsoever, or that he had either express or implied authority to so act for the defendant corporations. The fact that Bamberger was interested in the plaintiff corporation precludes him

from avoiding the defense of the statute of limitations on behalf of the defendant corporations. An agent may not put himself in a relation antagonistic to his principal's interest and yet bind his principal without express authority from his principal. 1 Mechem on Agency (2d Ed.) §§ 1188, 1189, p. 867.

The question of whether or not Joseph had authority to avoid the defense of the statute of limitations for the defendant companies is not so clear. The only authority granted to Joseph to bind the corporations is that contained in the articles of incorporation of each of the defendant companies wherein "the general manager shall have power to direct, manage and carry on the business of the corporation subject to the control of the board of directors and to make and execute all contracts pertaining to the ordinary business of the corporation."

In 1 Mechem on Agency (2d Ed.) § 990, p. 713, the author states the general rule as to the power of agents authorized to manage business in the following language:

"It is not within the ordinary interpretation of authority to manage that the agent shall have any general authority to waive, surrender or qualify his principal's rights, privileges, immunities or protective conditions. Management ordinarily involves control, preservation, due ordering, and not waiver, surrender or destruction. This is particularly true, of course, of rights and privileges which arise outside the domain of the agent's activities, but it is also ordinarily true of those which lie within. An agent authorized through management to acquire benefits for his principal, can have thereby no corresponding authority to give them up when once acquired."

The same author in the same volume of the same work, in section 997, p. 720, has the following to say about the authority of a managing agent to revive a debt barred by limitations:

"The authority of a managing agent to revive debts barred by the statute of limitations, depends largely upon his authority to adjust and settle claims against his principal. He has, as has been seen, authority in many cases to pledge the credit of the principal for

supplies and services furnished to the principal; but, as is pointed out by the court in Pennsylvania (*Beal* v. *Adams Ex. Co.*, 13 P. Super. Ct. 143): 'When the debt becomes due an entirely different question is presented; the renewal of it is not a matter of the operation of the business committed to the care of the agent, nor is it an exercise of the power of the agent to create new debts; a new promise to pay is an extension of the liability of the principal beyond the duration affixed to it by law. "A debt may be taken out of the statute by the act of an agent done in the regular course of his business if he has specific authority for that purpose, or if such authority be necessarily implied from the nature of his duties, but this results not from the power to create new debts but from a distinct and independent power to settle and adjust old ones. These powers are not in their nature the same, nor very much alike. The one is not a logical nor legal consequence of the other." ' "

In the absence of express authority it is quite generally held that an agent who is authorized to manage and carry on his principal's business has no implied authority to pledge or mortgage the property in his possession. 3 Fletcher, Cyc. Corps. § 2121, p. 3302, and cases there cited. To the same effect see *Edgerly* v. *Cover*, 106 Iowa 670, 77 N. W. 328; *Golinsky* v. *Allison*, 114 Cal. 458, 46 P. 295; *First National Bank* v. *Kirkby*, 43 Fla. 376, 32 So. 881; *Henson* v. *Keet & Rountree Merc. Co.*, 48 Mo. App. 214; *First National Bank* v. *Hicks*, 24 Tex. Civ. App. 269, 59 S. W. 842.

Unless the nature of the business or the scope of the general manager's employment requires it, he has no authority to bind the corporation by the execution of a promissory note. Thompson on Corporations (2d Ed.) vol. 2, § 1587, p. 667.

Applying these general principles of law to the instant cases, we are of the opinion that on the record before us the plaintiff has failed to establish as a fact any authority in Harry S. Joseph to bind the defendant corporations by avoiding the defense of the statute of limitations.

So far as appears, Joseph had no authority to adjust or settle, nor had he ever undertaken to adjust or settle, any

disputed claims against either of the defendant corporations. The authority granted to Joseph under the articles of incorporation to enter into contracts does not aid the plaintiff. None of the letters written by Joseph can be said to constitute a contract. No claim is here made that the plaintiff gave either of the defendants any extension of time for the payment of the obligations sued upon, or that the plaintiff gave any other new consideration for the promise or acknowledgment relied upon by plaintiff in these suits. Avoiding the defense of the statute of limitations cannot well be said to be within the usual or ordinary business of the defendant corporations. So far as appears, no benefit whatever could come to either of the corporations by an acknowledgment or promise to pay the obligations sued upon. Joseph, being without authority to execute a renewal note or mortgage, was likewise without authority to accomplish the same end by an acknowledgment or promise to pay the notes and mortgages involved in these suits.

The finding of the trial court that neither of the defendant corporations acknowledged or promised to pay the obligations sued upon within 6 years immediately preceding the commencement of these suits is justified by the records before us.

Having reached the conclusion that the plaintiff has not established any authority in Joseph to bind either of the corporations by an acknowledgment or promise to pay the obligations sued upon, it is not necessary to discuss the question of the sufficiency or insufficiency of the language used in the letters written by Joseph to constitute an acknowledgment or promise to pay such obligations. Upon such question we express no opinion.

The judgments are affirmed. Respondents are awarded their costs.

THURMAN, C. J., and CHERRY, STRAUP, and GIDEON, JJ., concur.