MYRTLE AVENUE CORPORATION, PLAINTIFF-RESPOND-
ENT, v. MT. PROSPECT BUILDING AND LOAN ASSO-
CIATION, A CORPORATION OF NEW JERSEY, DEFEND-
ANT-APPELLANT.

Submitted October 27, 1933—Decided January 5, 1934.

For the plaintiff-respondent, *Harry Levin* and *Isador V. Davis*.

For the defendant-appellant, *Stein & Stern* (*S. Arthur Stern*, of counsel).

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment entered in the Essex County Circuit Court, Judge Giordano presiding, on a jury verdict in the amount of $830 damages and $105.07 costs. The complaint did not clearly evince whether the action was for moneys had and received or for damages on breach of contract. The case was tried and went to the jury on the theory of breach of contract and therefore comes to us in that aspect.

The appellant building and loan association held the first mortgage in the amount of $168,000 on a property embracing eight attached buildings. The plaintiff held separate mortgages on each of these buildings and thus became, in effect, a second mortgagee as to the entire tract. The first mortgage

and the second mortgages all came into default. The plaintiff began foreclosures on its several mortgages and obtained the appointment of a rent receiver. Appellant, on October 10th, 1929, by resolution of its board of directors, ordered that proceedings for the foreclosure of its mortgage be immediately instituted. Some payments were then made but later the mortgage was three months in default and the appellant's bill of foreclosure was filed February 10th, 1930.

It appears that the monthly requirements, by way of interest and dues, of the appellant's mortgage amounted to $1,280. The net proceeds per month from the rent receiver amounted to $450. For reasons that need not be stated, plaintiff desired to have further steps in the appellant's foreclosure proceedings postponed until its own proceedings should have been completed. To that end, on or about December 6th, 1929, it paid to the appellant the sum of $830, which, added to the proceeds of $450 from the rent receiver, made up a full month's carrying charge on the appellant's mortgage. In so doing, it intended to pay a consideration for, and thought that it was getting, an agreement by the appellant, through its president, to postpone further action in the building and loan foreclosure proceedings until all of the several suits instituted by the plaintiff should have been brought to the point of sales. We must assume, on this appeal, that that was the thought and purpose of the plaintiff and that appellant's president did, so far as he could, make that agreement. But there was nothing in the letter which accompanied the remittance, and nothing in the appellant's records, to put the appellant, as a corporation, on notice of that agreement. The money was applied to the appellant's mortgage, but appellant nevertheless proceeded with its foreclosure before plaintiff's suits had been consummated. The present action is for the breach of the alleged agreement.

Appellant, at the trial, moved for a nonsuit and later for a direction of verdict upon the ground that the act of the president of the building and loan association was not that of the association itself and, being refused, now presents the judicial action thereon as error.

A corporation is bound by the act of an officer or agent only to the extent that the power to do the act has been conferred upon such officer or agent expressly by the charter, by-laws or corporate action of its stockholders or board of directors, or can be implied from the powers expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them. *Aerial League of America* v. *Aircraft, &c., Corp.,* 97 *N. J. L.* 530. The president may be said to be clothed incidentally with power to perform all acts of an ordinary nature which by usage or necessity inhere to his office and to bind the corporation in matters that arise in the usual course of business. Beyond this his official position gives him no more control over the property, funds or business of the corporation than any other director. *Mausert* v. *Feigenspan,* 68 *N. J. Eq.* 671.

The powers conferred upon the president by the constitution and by-laws of the building and loan association were these:

"The president shall preside at all meetings of the shareholders and directors. He shall countersign all negotiable instruments of the association and perform all duties usually pertaining to the office of the president. He shall when so ordered by the directors execute, acknowledge and deliver together with the secretary or treasurer releases and acquittances for all moneys which shall be paid to the association on any bond, paper, note, mortgage or other security of the association. He shall appoint an appraisal and other committees. It shall be his duty to supervise the placing of all insurance needed for the protection of all the money, property and securities of the association."

It is clear that the requisite authority was not there conferred unless in the words "all duties usually pertaining to the office of the president." But no act could usually pertain to the office of a president unless the occasion for it arises in the usual course of the business of his corporation. The business of a building and loan association in making mortgage

loans is to receive moneys from its subscribers or shareholders, loan those funds upon mortgages within the limited percentage of loan to value, accept first mortgage security, collect the interest, principal and other charges in accordance with the terms, and, if such security is in default, to proceed through the usual channels to protect the investment. There is nothing before us from which we may assume that it is in the usual course of the business of such an association to enter into an agreement that the protection of its investment by foreclosure proceedings on the default of the mortgage shall be postponed to some indefinite time in the future, be it months or years, or never, when each of eight junior mortgages shall have been brought through foreclosure proceedings to a sale. Such an undertaking would, to an extent and during the life of the agreement, make the first mortgage a junior encumbrance. There is no proof that the plaintiff had knowledge of, or indeed that there was, any earlier action of the same sort by the president. The president had no implied or apparent authority.

There was no authority special to the occasion given by the board of directors. Indeed the only relevant resolution passed by the board was directly to the contrary of a postponement of suit. It was a direction that the foreclosure proceeding be immediately instituted.

It is said that the corporation in permitting the $830 to be credited on its books thereby became chargeable with constructive notice, and with ratification, of the alleged agreement. We think not. The remittance of the check was accompanied by a letter from the plaintiff's attorney to appellant, followed by a letter from appellant's attorney to plaintiff's attorney, and by a further letter from plaintiff's attorney to appellant, from all of which a rational inference is that the payment was to be applied on the monthly charges of appellant's mortgage subject to return if, in the sale under foreclosure, the property should be bought in by another than the plaintiff, and from none of which a contract of the nature sued upon could be inferred. The payment of a monthly installment of interest and dues, whether by the owner of a

property or by a junior lienor interested in keeping a superior encumbrance from lapsing into default, is not notice that an agreement indefinitely postponing a foreclosure proceeding has been entered into; and there is no proof that the corporation had knowledge that the payment was other than a usual monthly installment. It is also said that the appellant, on demand made, refused to return the sum paid, and, by thus retaining and having the benefit of the consideration for the president's agreement, ratified the agreement. We fail to find the proofs upon which such an argument may be based.

The making of the contract was not authorized by the corporation, either expressly or by implication. It was not within the incidental or the apparent powers of the president. It was not in the usual course of business of the corporation. We are brought to the conclusion that the president was without authority to make the agreement which he undertook to make and upon which the plaintiff sues, and that the trial court should have granted either a nonsuit or a direction.

The judgment below will be reversed to the end that a *venire de novo* issue. We express our thought, however, that if the plaintiff asks to amend the complaint to include a count for money had and received, permission may properly be granted.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 16.