[No. 28057. *En Banc.* January 29, 1941.]

REUTER ORGAN COMPANY, *Respondent,* v. FIRST
METHODIST EPISCOPAL CHURCH, *Appellant.*[1]

[1]Reported in 109 P. (2d) 798.

*W. H. Sibbald,* for appellant.

*John F. McCarthy,* for respondent.

BEALS, J.—Reuter Organ Company, a Kansas corporation, as vendor, under date March 14, 1929, entered into a contract of conditional sale with First Methodist Episcopal Church, of Kelso, a Washington corporation, as vendee, whereby it agreed to build and install in the church edifice owned by the vendee, for the sum of $6,750, a pipe organ, according to agreed specifications. The contract was in writing, signed by the vendor and by "C. D. Rarey, Pastor & Manager," on behalf of the vendee. By the terms of the contract, five hundred dollars was to be paid April 5, 1929, one thousand dollars upon installation of the organ, and the balance, together with six per cent interest, in four equal annual installments. By the terms of the contract, title to the organ was to remain in the vendor until full payment of the purchase price, the vendee agreeing

". . . to assume all responsibility for said organ and parts thereof, covering loss or damage from the time the said organ or parts thereof have been delivered to the church, and will, until the above-mentioned purchase price is fully satisfied, keep the said organ and parts thereof fully insured against any and all loss or damage, such insurance to protect both parties hereto as their interests may appear and be established."

It does not appear that the five hundred dollar payment was made, but one thousand dollars was paid at or about the time the organ was installed. May 14,

1929, four promissory notes in the sum of $1,437.50 each, bearing interest at six per cent per annum, payable, respectively, one, two, three, and four years after date, were executed in favor of the vendor. Each was signed "First M. E. Church, Kelso, Wash., by W. H. Sibbald, Pres. of Bd. of Trustees. C. D. Rarey, Pastor," and each note contained a provision as follows:

"This note is one of a series given for the purchase of the instrument mentioned below, the conditions of which purchase are that the said instrument shall remain and be security for the payment of said notes until all notes given therefor shall have been fully paid. And on default of the payment of any of the said notes, or any installments provided therein, at their maturity, then all of the notes unpaid shall mature and become payable. All loss in case of fire or tornado to be borne by us. We further agree to insure the instrument mentioned below in a responsible old line insurance company, the loss payable to The Reuter Organ Co., as their interests may appear. "Instrument—Pipe Organ."

The note falling due May 14, 1930, was not paid, but during the year following, payments aggregating $590 were made and credited on the note. The church made no further payments on account of the purchase of the organ. There is in evidence a letter written by the vendor July 28, 1930, as follows:

"Mrs. W. H. Sibbald,
"First Methodist Church,
"Kelso, Wash.
"Dear Madam:
"On June 19th you advised us that as soon as Rev. Rarey returned from conference, which would be the next week, that you would take the matter up with him, about which we wrote you on June 9th. We have not yet heard from him in regard to this matter, however.

"We would like very much to get this matter straightened up and will ask that you let us know in regard to same at this time.

"Yours very truly,
"THE REUTER ORGAN COMPANY
"C. B. Russell"

Apparently Mr. Sibbald answered this letter, and August 20, 1930, the vendor wrote him as follows:

"Mr. Wm. H. Sibbald,
"c/o First Methodist Church,
"Kelso, Wash.
"Dear Sir:
"This will acknowledge receipt of your checks totaling $250.00 which we have credited to the organ account. This with the $100 remitted, makes a total of $350.00 that has been credited to the note that was due last May, leaving a balance of $1087.50 plus interest.

"We trust that your committee will see fit to take this matter up at once and forward us a check for the balance. It is several months past due and we are needing our money at this time to meet our obligations, so trust you will look after this right away.

"Yours very truly,
"THE REUTER ORGAN COMPANY
"C. B. Russell"

Other letters were written by the vendor to Mr. Sibbald, all directed to him personally, in care of the church. Mr. Sibbald wrote various letters to the organ company, using his personal stationery, and signing the letters individually, and not as a representative of the church. December 21, 1932, Mr. Sibbald wrote the organ company as follows:

"Reuter Organ Company,
"Lawrence, Kansas.
"Re: First Methodist Church, Kelso, Wash.
"Gentlemen:
"I have delayed answering you last letter regarding the organ for the reason that the times are so

bad that we can not make a payment on it at this time. We have great difficulty in keeping up all the interest on the main loan on the building and until the tide turns I see no way of changing the situation. The organ is kept in first class condition and there is no idea on the part of any person to repudiate the indebtedness or to let the organ go back if it can possibly be avoided. We are willing to give new notes if you prefer them but we can not see any way of making a payment on it at this time.

"Thanking you for your great kindness in this matter and assuring you that we shall endeavor to make payments in the future, I remain

"Yours very truly,

"WHS:MM"

The correspondence between the organ company and Mr. Sibbald continued at considerable intervals until 1937.

June 1, 1938, the organ was completely destroyed by fire, at which date it was insured in the amount of fifteen hundred dollars, which amount the insurance company in due time paid to the church. In September, 1938, the organ company instituted this action, alleging the execution of the contract and notes; the payments made thereon; that $5,160, principal, together with a large amount of interest, was due under the contract of sale; that defendant had agreed to keep the organ fully insured in an amount sufficient to cover the balance of the purchase price; that the organ had been destroyed by fire; and that the church had collected the full amount of insurance thereon, but failed to remit the same to the plaintiff. Judgment was demanded against the defendant in the sum of $8,049.60, principal, interest, attorney's fees, and costs.

The church answered the complaint, admitting the execution of the contract and notes, and the payments which had been made thereon, and that by the con-

tract the title to the organ remained in the plaintiff. It also admitted its covenant to keep the organ insured, but alleged that only fifteen hundred dollars had been collected on the insurance. It was also pleaded that the action had not been commenced within the time limited by law.

Thereafter, plaintiff filed an amended complaint, containing the same allegations set forth in its original complaint, but further alleging that plaintiff had believed that defendant, in accordance with its contract, had at all times kept the organ fully insured, and that only after the organ had been destroyed by fire, did plaintiff discover that the church had not insured the organ for more than fifteen hundred dollars. Plaintiff further alleged that, by reason of the defendant's failure to keep the organ insured and to make the payments called for by the notes, it had been damaged in the amount alleged in its original complaint, for which sum judgment was demanded.

The defendant answered the amended complaint, setting up several affirmative defenses, the only one which needs to be noticed being the plea of the statute of limitations.

Of the proceeds of the insurance policy in the sum of fifteen hundred dollars, the amount of $1,450 was subsequently, under stipulation, paid to plaintiff, the balance of fifty dollars being held pending the entry of judgment.

The action was tried to the court sitting with a jury. At the conclusion of the trial, the court submitted to the jury only the question of the value of the organ at the time of its destruction, which the jury, by its verdict, fixed at three thousand dollars. The record indicates that, up to this stage of the proceedings, the trial court had been of the opinion that the plaintiff was entitled to recover only the value

of the organ at the time of its destruction, by way of damages suffered by plaintiff by reason of defendant's failure to keep the organ fully insured.

After the return of the jury's verdict, and further argument by counsel, the court held that the statute of limitations had been tolled by Mr. Sibbald's letter dated December 21, 1932, above set forth. At or about this stage of the proceedings, defendant moved to reopen the case for the purpose of permitting the introduction of further testimony concerning Mr. Sibbald's authority to bind the church by any act which would result in tolling the statute of limitations, which motion was denied. The court then entered findings of fact in plaintiff's favor, and concluded that, by the letter above referred to, the statute of limitations had been tolled, and that no part of plaintiff's claim was barred by the statute. The court then rendered judgment against defendant in the sum of $6,978.50. From this judgment, defendant has appealed.

Error is assigned upon the order of the court permitting plaintiff to file its amended complaint; upon the entry of two findings of fact; upon the refusal of the trial court to reopen the case, on appellant's motion for the introduction of further testimony; and upon the entry of judgment against defendant in any sum greater than $1,437.50, together with interest from May 14, 1929. Appellant also contends that the trial court erred in refusing to regard the jury's verdict, and in entering judgment notwithstanding the verdict.

■ Appellant first complains of the ruling of the trial court permitting respondent to file its amended complaint, which complaint is based upon allegations contained in appellant's answer to the original complaint. Under Rule VI, Rules of Practice, 193 Wash. 42-a, the trial court did not err in granting respondent

leave to amend its complaint. This assignment of error is without merit.

Appellant complains of findings Nos. 6 and 10. Finding No. 6 reads as follows:

"That on or about the 21st day of December, 1932, the defendant acknowledged in writing that it was indebted for the entire unpaid balance of the purchase price of said organ and agreed in writing to pay the same."

By finding No. 10, the trial court found that there was due and owing to respondent from appellant the sum for which judgment was later entered.

The notes which appellant gave respondent matured, respectively, May 14th of the years 1930, 1931, 1932, and 1933. Appellant made its last payment to respondent during the month of December, 1930. This action was commenced September 9, 1938, more than six years after the last payment to respondent, and after the maturity dates of the first three notes. As to the note which matured May 14, 1933, the action was seasonably commenced. Appellant admits its liability upon this note, contending that as respondent has received $1,450 of the insurance money, appellant is not further liable.

In its amended complaint, respondent alleged the making of the contract, the delivery of the organ, the payment of one thousand dollars, and the execution and delivery of the four promissory notes. The payment of $590 was also acknowledged. Respondent then alleged appellant's agreement to keep the organ insured; that respondent relied upon this agreement; that after the organ was destroyed respondent, for the first time, discovered that the organ was insured for only fifteen hundred dollars; concluding with the allegation that appellant refused to pay the balance of the purchase price, "and that by reason

thereof and by reason of defendant's failure to keep the organ insured in accordance with said agreement plaintiff has been damaged in the sum of $8,049.60." The amended complaint, then, is apparently based on the theory that respondent is entitled to judgment because of the breach of appellant's covenant to insure. Upon this theory, the court submitted to the jury only the question of the value of the organ at the time of its destruction, the trial court being of the view that respondent's right to recover was limited to that amount.

Under the contract of conditional sale, the organ was to remain the property of respondent until paid for, and the covenant to insure, never having been repudiated by appellant, was a continuing covenant. Upon this theory of the case, the trial court was correct in its view that, for breach of this covenant, respondent's damages would be its loss at the time of the destruction of the organ, which would be the then reasonable value of the instrument, which value, as above stated, the jury fixed at three thousand dollars.

By its later memorandum opinion, the trial court indicated its then view that respondent was entitled to recover upon the contract, the court stating that, by Mr. Sibbald's letter of December 21, 1932, a new date was established for the running of the statute of limitations, and that the action was seasonably commenced on all of appellant's written promises to pay. As to Mr. Sibbald's office in appellant corporation, it appears that he signed the notes as president of the board of trustees, the pastor of the church also signing the notes and alone signing the contract of conditional sale. The evidence would support a finding that Mr. Sibbald continued to act as president of appellant's board of trustees until the time of trial.

The correspondence above referred to was introduced in evidence, but practically all of the testimony is concerned with the question of respondent's claim for damages because of appellant's breach of its covenant to insure, and in connection with the value of the organ.

The record contains no word of evidence that Mr. Sibbald had express or implied authority to bind appellant in any manner whatsoever, or that appellant's board of trustees, its pastor, or any officer or agent of appellant ever knew of the correspondence between respondent and Mr. Sibbald. Respondent's first letter was directed to Mrs. Sibbald. All of its other letters which are in evidence were addressed to Mr. Sibbald personally, and apparently each letter written by Mr. Sibbald was signed by him as an individual, and not as any officer of appellant.

On this phase of the case, then, the question is whether Mr. Sibbald, *ex officio,* as president of the board of trustees, had authority to bind appellant by setting up, as against appellant, a new date for the running of the statute of limitations on appellant's obligations.

In 19 C. J. S. 97, § 752, is found the following text:

"Aside from his position as presiding officer of the board of directors and of the stockholders when convened in general meeting, the president of a corporation has, by virtue of his office merely, no greater power than that of any director. Whatever authority he has must be expressly conferred on him by statute, charter, or by-law or the board of directors or be implied from express powers granted, usage or custom, or the nature of the company's business."

In 3 Thompson on Corporations (3d ed.), 4, § 1565, the principle is stated as follows:

"The president of a corporation, strictly speaking is only the president of the board of directors. . . .

In strict legal contemplation his duties are limited to presiding at meetings of the board of directors. His chief functions in this respect are such as usually appertain to the office of the president of a deliberative assembly; such as calling the board to order; submitting business propositions for the interest of the corporate affairs as they have been communicated to him or as the result of his experience; entertaining motions; appointing committees, when not otherwise provided for; and exercising a general control as the presiding officer of the board of directors. Unless otherwise especially empowered, or permitted by a custom or usage, the president has no other duties, and, as will be seen, has no more power, and can exercise no more authority, than any other member of the board. The president of a corporation, although a director, is not the agent of the directors but of the corporation. The president has no greater power as director than any other director. The duty of a president of a corporation is to preside and his other duties may vary according to usage or the by-laws of his corporation."

In the case of *Hilliard v. Upper Coos R. R.*, 77 N. H. 129, 88 Atl. 993, the supreme court of New Hampshire, in an action brought against a railroad for goods sold, held that certain statements made by the corporation's president did not toll the statute of limitations, there being no evidence that the president had authority to bind the company. In the course of its opinion, the court said:

"Assuming as the most favorable interpretation that can be put upon the plaintiff's account of Van Dyke's statements in 1906, that he then admitted the items sued for were valid claims against the defendants and in their behalf promised to pay them, the fact that he held the office of president does not make his admission and promise the acts of the corporation. They are not such unless he was expressly or impliedly authorized to make them in behalf of the defendants. It is conceded there is no evidence of

express authorization, and no evidence is found of a course of dealing from which such authorization could be inferred."

The supreme court of Utah, in *Salt Lake Valley etc. Co. v. St. Joseph Land Co.*, 73 Utah 256, 273 Pac. 507, held that letters written by the president of defendant corporations, who was also a director and general manager thereof, were insufficient to bind the corporations as an acknowledgement of the debt, which would start anew the running of the statute of limitations. In the course of its opinion, the court said:

"So far as appears, Joseph had no authority to adjust or settle, nor had he ever undertaken to adjust or settle, any disputed claims against either of the defendant corporations. The authority granted to Joseph under the articles of incorporation to enter into contracts does not aid the plaintiff. None of the letters written by Joseph can be said to constitute a contract. No claim is here made that the plaintiff gave either of the defendants any extension of time for the payment of the obligations sued upon, or that the plaintiff gave any other new consideration for the promise or acknowledgement relied upon by plaintiff in these suits. Avoiding the defense of the statute of limitations cannot well be said to be within the usual or ordinary business of the defendant corporations. So far as appears, no benefit whatever could come to either of the corporations by an acknowledgement or promise to pay the obligations sued upon. Joseph, being without authority to execute a renewal note or mortgage, was likewise without authority to accomplish the same end by an acknowledgement or promise to pay the notes and mortgages involved in these suits."

In the case of *Kennedy v. Mutual Life Ins. Co.*, 162 Md. 340, 159 Atl. 780, the court of appeals of Maryland, discussing a similar question, said:

"As a corporation can act only through its officers and agents, a waiver of the statute may be effectively

accomplished through its duly authorized representatives. But the existence of such authority is ordinarily a subject of proof rather than of presumption. Its possession by a claim agent or his assistant is not necessarily inferable merely from that designation of his position. . . .

"The claim involved in this suit is not such as would customarily arise in the course of a claim agent's experience. It presented an extraordinary problem, for the solution of which the powers incident to the performance of his usual duties could not, in our judgment, be properly assumed to be adequate. There being no evidence tending to prove such authority, we concur in the ruling of the trial court to that effect."

The court of appeal of Louisiana, in the case of *Commercial Nat. Bank v. Henderson,* 173 So. (La. App.) 790, stated the rule as follows:

"If, by any method of reasoning, we can give any weight to the above line of testimony, it could not be held to be an acknowledgement such as to interrupt prescription for the reason it is not shown that the president of the Henderson Land, Timber & Investment Company, Inc., had any authority to acknowledge the debt evidenced by the note and take it out of prescription. The president of a corporation is authorized, as an agent of the corporation, and only has such powers as are given him by the charter, by-laws, or by the board of directors, and, in some instances, powers he acquires through customs and long usage, without objection from the directors or stockholders."

Our attention is called to no case in which it was held that the president of a corporation or the chairman of its board of directors has *ex officio* authority to bind the corporation by waiving the bar of the statute of limitations, whether before or after the full period of the statute has run, unless it appears that such officer had direct authority to take such action,

or that his act was later ratified by the corporation or its board of directors.

In the case at bar, no evidence whatever was introduced concerning the articles of incorporation or the by-laws of appellant corporation, nor of any corporate action in connection with the subject matter of this litigation. The pastor of the church alone signed the contract of conditional sale, and the pastor and Mr. Sibbald, as president of the board of trustees, signed the notes. It does not appear from the correspondence between respondent and Mr. Sibbald that the latter was ever addressed in any official capacity as an officer of the corporation, or that he ever purported to act on behalf of the corporation. Of course the rule is well established that, in determining the scope of authority of an agent, his statements or representations, standing alone, are not evidence of such agency.

We are convinced that the trial court erred in holding that Mr. Sibbald's letter of December 21, 1932, had the effect of establishing a new date for the commencement of the running of the statute of limitations on appellant's notes; this for the reason that the record shows no authority on the part of Mr. Sibbald to act for or on behalf of the corporation. Because of our opinion on this question, it is not necessary to discuss the matter of whether or not the letter, by its terms, would have been sufficient to accomplish the effect contended for by respondent, if the record showed the letter to be a corporate act, either by authority given or ratification.

Three of the four notes held by respondent were therefore barred by the statute of limitations, at the time of the commencement of the action, and the trial court erred in rendering judgment against appellant for the total amount due upon the four notes.

We have quoted above a paragraph which is contained in each of the notes. We note that it is there provided that, in case of default in payment of any one of the notes, "then all of the notes unpaid shall mature and become payable." Maturing of the notes is not made to depend upon the exercise of any option by respondent, and it might well be contended that, because of the default on the part of appellant, each one of the notes became due May 14, 1930. If such a result followed from the nonpayment of the first note, all of the notes were barred by the statute of limitations prior to the commencement of this action. Because of our view upon the other phase of the case, this question need not be discussed, and we express no opinion thereon.

As above stated, the record of the case is somewhat confused. The action was brought and apparently tried upon the theory that appellant was liable for breach of its covenant to insure the organ. If the suit had been based upon the notes, it would seem that the bringing of such an action would have had the result of vesting title to the organ in appellant. We find no basis in the record for holding that respondent changed its theory and converted its action to a suit on the notes, so as to bring about the result above noted. Respondent, then, may yet contend that its action is for breach of the covenant to insure. Such an action is not barred by the statute of limitations, as the organ remained respondent's property, and was in the possession of appellant, under the contract of conditional sale, which contained a continuing covenant on the part of appellant to keep the organ protected by insurance.

Respondent argues that respondent's right against appellant is not limited by the actual value of the organ at the time it was destroyed, but we are

convinced that this contention cannot be successfully maintained. Respondent was damaged by its actual loss, which was the value of the organ, which it might have repossessed, at the time it was destroyed by fire. This value the jury fixed at three thousand dollars, and we are convinced that it should be held, following this verdict, that respondent was damaged in that amount. Had appellant kept the organ insured for the full amount due respondent, the insurance company could have been required to pay no more than its actual value. This rule is stated in 26 C. J. 351, § 450, as follows:

"A contract for insurance against fire is ordinarily a contract of indemnity and the insured is entitled to be put in the same condition pecuniarily in which he would have been had there been no fire; and except in the case of valued policies, or where there are statutory provisions limiting the amount of liability, the general rule is that in a case of total loss the insured is entitled to recover the fair cash or market value of the property at the time and place of the loss, up to but not exceeding the amount fixed in the policy, although it exceeds the limit of insurance as fixed by a by-law of the insurer. Under this rule the insured is not entitled to recover the cost of the property, as its actual value, although the original cost of the property may be considered as evidence of its value in connection with evidence as to depreciation; neither is the insurer's liability for the cash value affected by the fact that the insured had offered to sell the property for less than its actual value, nor by the fact that the amount of loss cannot be determined without difficulty, and is to some extent a matter of estimate. The cash value is to be estimated at the time of the loss and not at the time the property is exposed to danger by the outbreak of the fire."

Assuming that one note is not barred by the statute of limitations, respondent cannot both have judgment

326

on the note which is not barred and judgment for breach of the covenant to insure.

The judgment appealed from will accordingly be modified by reducing the same to the sum of three thousand dollars, upon which will be credited the amount which respondent has already received. Appellant will recover its costs in this court.

ALL CONCUR.

