**RENAULT v. L. N. RENAULT & SONS, Inc.**

No. 10253.

United States Court of Appeals

Third Circuit.

Argued Nov. 16, 1950.

Decided March 15, 1951.

Rehearing Denied April 20, 1951.

Lois G. Forer, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

David Berger, Philadelphia, Pa., for appellee.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

We are asked to decide whether the district judge was justified in granting defendant judgment under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rules of Civil Procedure 50(b), after a jury had failed to agree on a verdict. We hold that the learned judge erred in so doing.

Plaintiff, a Pennsylvanian, is the widow of Alexander Renault and sole beneficiary under his will. Her action, brought as executrix of his estate, is founded upon a demand note executed in 1921 by the defendant and payable to Alexander Renault, then its president. The defendant is a New Jersey corporation, engaged in the sale of alcoholic beverages. Federal jurisdiction has been invoked by virtue of diversity of citizenship and the requisite jurisdictional amount.

The following facts appear to be uncontested: The note, not under seal, was in the amount of "$13,417, with interest at rate of six per cent," and was dated April 15, 1921. It was signed by the vice-president and by the secretary of defendant, and no contention has been made here that the note was issued without authority or without consideration. Plaintiff produced no evidence indicating any activity whatsoever with respect to that note between 1924 and 1946; in fact, she concedes that in May 1946, when the events on which she bases her instant claim began to transpire, the obligation had been long barred by the Statute of Limitations.

On May 13, 1946, defendant gave plaintiff a check in the amount of $500. Thereafter, between June 11, 1946, and January 16, 1947, she received from defendant 31 checks, approximately weekly, totaling $3200.[1] Since the latter date, defendant has paid her nothing. All 32 checks had the name of defendant imprinted thereon; all were made payable to plaintiff, without

---

1. All were $100 checks, except that dated June 28, 1946, which was for $200.

any notation as to the purpose of the payment or the capacity in which plaintiff was to receive payment; all were signed by at least two officers of defendant; and all were drawn on the same Philadelphia bank.

■ Defendant's explanation of the issuance of the checks is that John D'Agostino, president of defendant, hired plaintiff to do promotional work for defendant, and that these checks represented payments for her services. Plaintiff, however, denies being hired for promotional work or ever engaging in such work. On the contrary, plaintiff contends that, in May 1946, John D'Agostino promised that the corporation would pay the demand note by an initial payment of $500 and subsequent weekly payments of $100 until the note was fully paid, and that the aforementioned checks were partial payments in discharge of that renewed obligation. Her testimony in the court below was to that effect. It is clear that she was entitled to have the jury determine the truth of her assertions, unless defendant has a defense which would obviate the necessity for passing upon the factual issues. It may very well be that plaintiff's explanation is highly improbable. A court, however, must not substitute its judgment as to credibility in the place of the determination of a jury.[2]

Defendant has presented several reasons why it thinks that, as a matter of law, plaintiff could not here recover. We shall consider them separately.

■ Defendant avers that the note was paid. In support of that allegation, defendant points to a sealed release signed by plaintiff and dated December 29, 1924, which by its terms discharges John D'Agostino from all debts to plaintiff, "and in particular in respect to an alleged note held by Alexander Renault in his lifetime against the L. Renault & Son Corporation, in the sum of $13,000, which said note has been lost or misplaced * * *"[3] The release, of course, does not on its face purport to discharge defendant corporation. Whether the name of D'Agostino alone appeared on the release because of some erroneous mutual belief that defendant was thereby likewise released,[4] or perhaps because of the mistaken belief that D'Agostino was the person liable under the note,[5] would be matters appropriate for jury consideration.

■ Defendant also urges that John D'Agostino lacked the authority to bind defendant by the alleged renewal promise. A study of the record discloses no evidence of express authority in John D'Agostino. Further, the law of both New Jersey and Pennsylvania[6] limits the scope of a cor-

2. Defendant's explanation is likewise not overly plausible. We note that plaintiff, who was allegedly hired to do promotional work, earned $3700 in eight months, while John D'Agostino, president of defendant, earned only $17,000 a year. From our experience, we are aware that it is not unknown for corporations to place widows upon the corporate payroll as their gesture to a departed officer.

3. After counsel had made their closing arguments to the jury, defendant produced a personal check of John D'Agostino in the amount of $4000, dated December 29, 1924 (the same date as the release), showing payment by D'Agostino, then president of defendant, to M. M. Renault. The district judge decided not to reopen the case to permit the check to be received in evidence. Had his discretion been exercised to the contrary, it may well be that the indecision of the jury would have been re-

solved, and that this appeal would not be before us.
We express no opinion, of course, as to whether the fact that the note was for more than $13,000, while the check was for only $4000, has any connection with the existence of the prohibition laws at the time and the effect of those laws upon a business like that of defendant.

4. At the time the release was executed, John D'Agostino controlled the defendant corporation. Hence, a jury might find that the parties had treated D'Agostino and the corporation as identical.

5. It is conceded that the note was not at hand when the release was executed. The evidence indicates that, at the time the release was signed, plaintiff told John D'Agostino that the note was lost or misplaced.

6. The record reveals that most of the operative facts occurred in New Jersey.

porate president's implied authority to acts within the ordinary course of business.[7] A promise to pay a stale debt has usually been designated an extraordinary promise not within the president's implied authority. Reuter Organ Co. v. First Methodist Episcopal Church, 1941, 7 Wash.2d 310, 109 P.2d 798, 802; Salt Lake Valley Loan & T. Co. v. St. Joseph Land Co., 1928, 73 Utah, 256, 273 P. 507. Where one man completely controls a corporation, however, a necessary and logical exception has been carved out of the above rule. In such situation, the one man achieving unrestrained control is held prima facie to have power to do all acts which the Board of Directors could have authorized. Chestnut Street Trust & Savings Fund Co. v. Record Pub. Co., 1910, 227 Pa. 235, 75 A. 1067; C. L. McClain Fuel Corp. v. Lineinger, 1941, 341 Pa. 364, 19 A.2d 478. We shall consider appellant's contention that the case at bar falls within this exception.

John D'Agostino's testimony indicates that sometime prior to Alexander Renault's death, D'Agostino had purchased a total of 125 shares of stock of the defendant from one Press and one Reiter. Apparently some of these shares were soon transfered to the names of members of John D'Agostino's family, for he testified that, at the time of Alexander Renault's death, the D'Agostino family held 125 shares, but that he controlled the entire 125. Immediately prior to Alexander Renault's death, it appears that stock control of defendant was divided equally between Alexander Renault and John D'Agostino, each owning or controlling 125 shares, this representing all the outstanding stock of defendant corporation. After Renault's death, John D'Agostino purchased the Renault holdings,[8] thus giving him complete stock control. John D'Agostino served as president of defendant continuously from 1923 until the date of trial. There is no evidence as to any change in his relation to the corporation in the period 1924–1947. The evidence indicates that, in 1946 and 1947, the corporate picture had not changed materially from the picture in 1924. John D'Agostino, as in 1924, was president. The D'Agostino family, as in 1924, owned all the shares of stock, with the possible exception of one share. A jury could well find that John D'Agostino, as in 1924, had complete control of the corporation during the years 1946 and 1947.

Should the place of contracting be held to be New Jersey, the mere oral promise of John D'Agostino would not bind defendant because the New Jersey Statute of Limitations provides that a promise to pay a debt barred by the statute must be in writing. N.J.Stat.Ann. 2:24–9.[9] The New Jersey statute, however, declares that it does not "lessen or alter the effect of any payment of principal or interest made by any person on the obligation in suit." A part payment is held to toll the statute of limitations on the theory that the law implies from partial payment a promise to pay the entire obligation.[10] Of course, a mere payment of money by a debtor to his creditor does not, in itself, constitute proof that the money was intended as partial payment on a particular obligation barred by the statute of limita-

Defendant is a New Jersey corporation; the note in controversy was executed and payable in New Jersey; the checks alleged to be part payments on the note were mailed from the New Jersey office of defendant and were payable on a Pennsylvania bank; the release was executed in New Jersey. The record is unclear as to where John D'Agostino made his alleged renewal promise. On retrial, this should be clarified. The determination of which state law governs, however, does not affect the result in this appeal.

7. Kelly, Murray, Inc., v. Lansdowne Bank & Trust Co., 1930, 299 Pa. 236, 149 A. 190; Myrtle Ave. Corp. v. Mt. Prospect Bldg. & Loan Ass'n, 1934, 112 N.J.L. 60, 169 A. 707.

8. John D'Agostino purchased the Renault holdings from Mrs. Margaret Renault, executrix of the estate of Alexander Renault and plaintiff herein.

9. Under Pennsylvania law, the New Jersey Statute of Limitations would be "borrowed." 12 Purdon's Pa.Stat.Ann. § 39.

10. Romaine v. Corlies, 1885, 47 N.J.L. 108; White v. Pittsburgh Vein Coal Co., 1920, 266 Pa. 145, 109 A. 873.

tions. Romaine v. Corlies, 1885, 47 N.J. L. 108; McPhilomy v. Lister, 1941, 341 Pa. 250, 19 A.2d 143, ·142 A.L.R. 385. The fact that the first check was issued very soon after D'Agostino's alleged promise and the further fact that the checks coincided in amounts and dates with that promise are sufficient evidence from which the jury might find that the checks were intended as part payments on the note. We hold that the jury should have been permitted to decide whether the alleged promise of John D'Agostino was within the scope of his implied authority and whether the checks issued by defendant corporation were intended to be partial payments on the note in question.[11]

As a final defense, defendant contends that the alleged promise cannot be binding on the defendant corporation because it is void under the New Jersey Statute of Frauds which requires an agreement not to be performed within one year from the making thereof to be in writing.[12] It is clear that if the defendant performed in accordance with the terms of the alleged promise of John D'Agostino, performance would not be completed within one year. Plaintiff contends this statute is inapplicable because the place of contracting is Pennsylvania, or, in the alternative, because the New Jersey Statute of Frauds would be considered by a Pennsylvania court as procedural. Even assuming, however, that New Jersey is the place of contracting and that the New Jersey statute would be applied by a Pennsylvania Court, we hold that the New Jersey statute is inapplicable to the facts of this case. The New Jersey courts have held that this statute applies only where neither side is to perform within one year.[13] Boyce v. Miller, Sup.Ct.1937, 190 A. 845, 15 N.J.Misc. 280. The New Jersey cases appear to be in accord with Section 198 of the Restatement of the Law of Contracts to the extent that it limits the scope of this type of statute of frauds to bilateral contracts which cannot be fully performed within one year. The contract upon which plaintiff brings this action, however, has been considered by both parties as unilateral. See Restatement, Contracts, § 12.

The New Jersey Statute of Frauds is inapplicable for a further reason; it has been held not to apply to oral agreements which may not be performed within one year and which are not in fact performed within one year, if full performance might have been had within one year. Reynier v. Associated Dyeing & Printing Co., 1936, 116 N.J.L. 481, 184 A.

---

11. Should the jury decide that the alleged promise was not within the scope of D'Agostino's implied authority, there would remain the question whether the defendant, in issuing these corporate checks to plaintiff, ratified D'Agostino's promise. Maria D'Agostino, Chairman of the Board, signed 29 checks. John Ordille, vice president, and Adolph Elmer, treasurer, signed 29 and 14 checks respectively. Generally, there can be no ratification unless the ratifying directors have knowledge of all material facts connected with the transaction. If, however, the circumstances are such as to put reasonable men on inquiry, a jury can infer that the directors possess the knowledge necessary for ratification. 2 Fletcher on Corporations 757; Restatement, Agency, § 91, comm. c and e.

12. "25:1–5 Promises or agreements not binding unless in writing

"No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:

\* \* \* \* \* \*

"e. An agreement that is not to be performed within one year from the making thereof." N.J.Stat.Ann. § 25:1–5.

13. The New Jersey cases should be compared with the Restatement, Contracts, § 198, which limits the scope of statutes of frauds of the type enacted by New Jersey to bilateral contracts *where either promise cannot be performed within one year.* As soon as either promise is fully performed, however, the other promise is held by the Restatement to be no longer within the statute of frauds. Accord: Thompson v. Van Hise, Sup.Ct.1946, 133 N.J.L. 524, 45 A. 2d 182.

780, 104 A.L.R. 1002. In the instant case, while defendant may have been under no duty to perform fully within one year, there is nothing to indicate that it did not have the right to discharge its entire alleged legal obligation by paying off the note within one year.

For the reasons stated, the judgment of the lower court will be reversed and the cause remanded for a new trial.